**CAMERON COUNTY SAVINGS ASSOCIATION, Appellant,**

**v.**

**CORNETT CONSTRUCTION COMPANY, Appellee.**

**No. 13–85–211–CV.**

Court of Appeals of Texas, Corpus Christi.

May 29, 1986.

Rehearing Denied June 19, 1986.

Richard D. Davis, Harlingen, for appellant.

Randall P. Crane, San Benito, for appellee.

Before BENAVIDES, UTTER and SEERDEN, JJ.

## OPINION

BENAVIDES, Justice.

This case arises out of an assignment of funds. The funds in question were proceeds from a municipal utility district bond sale, used to pay construction costs to appellee, Cornett Construction Company (Cornett).

In a trial to the court, based on stipulated facts, Cornett was awarded $29,-215.63 liquidated damages against the defendants, jointly and severally (Larry Rodgers, David Clark, William T. Pullen and Enrique Lopez, d/b/a Los Angelitos Development, and Cameron County Savings Association), and all costs of court were assessed against Cameron County Savings Association (CCSA). CCSA is the sole appellant.

No findings of fact or conclusions of law were filed or requested. Where findings of fact or conclusions of law are not properly requested and none are filed, the judgment of the trial court must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *Jim Walter Homes, Inc. v. Valencia*, 679 S.W.2d 29 (Tex.App.—Corpus Christi 1984), *affirmed as modified*, 690 S.W.2d 239 (Tex.1985); In re W.E.R., 669 S.W.2d 416 (Tex.1984).

█ In addition, this case was submitted to the court on stipulated facts. In reviewing a case tried on an agreed statement of facts, an appellate court's consideration is limited to the correctness of the trial

court's application of the law to the admitted facts; it is without authority to draw any inference or find any facts not encompassed in the agreement unless, as a matter of law, such further inference or fact is necessarily compelled by the agreed facts. *Guzman v. Acuna,* 653 S.W.2d 315 (Tex. App.—San Antonio 1983, writ dism'd).

Appellant brings three points of error, claiming that the trial court erred:

(1) in holding that the right of reimbursement was not a partnership asset, capable of partition and assignable by the partners to appellant as collateral for their individual debts;

(2) in holding that the CCSA lien was not superior to appellee's claim; and

(3) in holding the defendants jointly and severally liable, for an amount other than the amount held in escrow.

The following stipulated facts are relevant to this case: Los Angelitos Joint Venture (L.A.), formed by William T. Pullen, Tropical Diversified, Inc. (Larry Rodgers), D.L.C., Inc. (David Clark), and Enrique Lopez, entered into a contract with Valley Municipal Utility District Number 2 (MUD 2) on July 10, 1981, whereby L.A. agreed to install water distribution lines, electrical utilities, sewer lines and storm drainage at Rancho Viejo Sections 6, 7, 8, in Cameron County.

MUD 2 agreed to reimburse L.A. seventy percent of the costs of construction, which was to come *solely* from the sale of bonds by MUD 2. This right of reimbursement included interest on the amount due until the amount was actually paid from the bond proceeds. The parties also agreed that MUD 2 was under no obligation to offer the bonds for sale until the tax rolls on the Rancho Viejo sections were increased enough over the existing values to service the bond issue.

At the time of L.A.'s formation, each party agreed to pay twenty-five percent of the venture's expenses and to share in the profits by the same percentage.

L.A. contracted with several entities to actually construct the improvements related to the MUD 2 and L.A. agreement providing for utility, sewer, and storm construction at Rancho Viejo. Appellee, Cornett Construction Company was one of these entities.

The construction commenced in the fall of 1981 and was completed in June 1982. Cornett performed $257,595.73 worth of work and as of July 7, 1982, was owed $29,215.63. Cornett did not file any mechanic's and materialmen's liens on the property.

In August 1981, shortly after L.A. contracted with MUD 2, David Clark and Larry Rodgers (the sole shareholders of D.L.C., Inc., and Tropical Diversified, Inc., respectively), organized Valley Truss Systems, Inc. (VTS), as the only shareholders of the company.

In March 1983, VTS applied to appellant (CCSA) for a $300,000.00 Small Business Administration Loan. Clark and Rodgers (on behalf of VTS) indicated in the loan application that the principal collateral on the loan was to include 50% of the right of reimbursement from MUD 2. VTS did not own any interest in the right of reimbursement.

On April 19, 1983, the four parties to L.A. agreed to partition their right of reimbursement equally, 25% to each party. They also agreed that each party would have the power to assign its undivided interest. The partition agreement said nothing regarding unpaid bills. The same day, D.L.C., Inc. (Clark) and Tropical Diversfied Properties, Inc. (Rodgers), conveyed their respective 25% interests to VTS, giving VTS a 50% interest in the right of reimbursement.

On May 3, 1983, VTS received its loan from appellant, and purportedly assigned as collateral its 50% right of reimbursement to appellant as security for the loan. Appellant then notified MUD 2 of the assignment. The loan to VTS was unrelated to the construction agreement between L.A. and MUD 2. (We note, however, that the collateral assignment of the right to reimbursement would be subject to the contract between L.A. and MUD 2 and the

limitation on the use of proceeds from the bond sale provisions contained therein.)

On December 21, 1983, appellee's attorney sent a letter of demand for the amount owed to appellee, $29,215.63, to L.A.'s attorney and manager, Paul Hemphill.

Meanwhile, VTS became delinquent on its loan from appellant, and by January 1984, appellant notified MUD 2 that it had foreclosed on "their" right of reimbursement.

In the spring of 1984, meetings were held to discuss a possible bond sale. After several discussions between MUD 2 directors, their bond advisor, L.A.'s attorney (Hemphill), and appellant's attorneys, appellant agreed to place $16,832.81 of its share of the disbursement in a trust account held by Paul Hemphill, until "the matter could be settled by a declaratory judgment suit which would be filed by Paul Hemphill after the proceeds were paid."

On March 9, 1984, a bond sale was held. MUD 2 paid Hemphill $456,271.78 which represented the amount due L.A. on November 15, 1982, plus accrued interest after that date. Hemphill, as trustee, wrote checks to appellant and to Pullen (now holding 50% interest in the right of reimbursement for L.A.) of $211,303.07 each. Pullen volunteered to leave the same amount ($16,832.81) as appellant had agreed to leave in the trust account until the declaratory judgment suit was decided leaving a trust account balance of $33,665.64. Appellee filed this suit prior to any declaratory judgment action being taken.

■ At the outset, it is important to properly characterize the funds involved; the funds are proceeds from a municipal utility district bond sale earmarked for paying construction improvements. Regardless of what they are called, the purpose of the funds was to pay construction costs, and not as assignable assets to secure other debts.

■ Texas Water Laws, TEX. Water Code § 54.501 (Vernon 1985) sets out the purposes for which a municipal utility district may issue bonds:

The district may issue its bonds for the purpose of purchasing, constructing, acquiring, owning, operating, repairing, improving, or extending any district works, improvements, facilities, plants, equipment, and appliances needed to accomplish the purposes set forth in Section 54.012 of this code for which a district shall be created, including works, improvements, facilities, plants, equipment, and appliances needed to provide a waterworks system, sanitary sewer system, storm sewer system, and solid waste disposal system.

There is nothing included in this provision that allows bonds to be issued to secure other debts. Furthermore, the contract between MUD 2 and Los Angelitos provided that the proceeds of the bond sales could only be used for purposes cited in § 54.501. Finally, it is firmly established that a creditor who advances money to a subcontractor, even if the money is advanced to pay for labor and materials, is not entitled to the benefit of liens given laborers and materialmen, nor to the benefit of the bonds required of general contractors to secure payment for labor and materials. *F & C Engineering Co. v. Moore*, 300 S.W.2d 323 (Tex.Civ.App.—San Antonio 1957, writ ref'd n.r.e.).

■ Appellant attempts to equate the question in this case to a common law rule of unsecured creditor rights; we disagree with appellant's characterization. It is a well-settled rule of law that mechanics' liens can only be created against public buildings and grounds when the right is *expressly* conferred by the statutes. *Atascosa County v. Angus*, 83 Tex. 202, 18 S.W. 563 (1892). Moreover, as a matter of public policy, liens are not permitted on public improvements where payment and performance bonds are required. *Quincy Lee Co. v. Lodal & Bain Engineers*, 602 S.W.2d 262, 264 (Tex.1980); TEX. Water Code § 54.226 (Vernon 1971); TEX.REV. CIV.STAT. Art. 5160 (Vernon 1977).

■ The construction contract in this case did not give rise to an assignable lien.

We see no reason to consider this case in light of the common law rules of partnership. Since there is no lien entitlement and no consideration of partnership principles, appellant's first two points of error are overruled.

By its third point of error, appellant argues that the trial court erred in holding appellant jointly and severally liable with the other defendants when the pleadings supported by the evidence only sought recovery out of funds held in escrow, plus interest and attorneys fees from appellant. Appellant claims that Plaintiff's First Amended Original Petition sought only the amount due it from the funds in escrow, yet the judgment, although awarding the amount held in escrow ($29,215.63) failed to limit the *source* of recovery to the funds in escrow, thus not conforming to TEX.R. CIV.P. 301.

■ Although initially appellee sought damages from appellant, at trial appellee dropped its claim for damages, thus leaving only a claim for the escrow amount, interest and attorney's fees. The facts stipulated to at trial indicate that the amount owed appellee, unpaid at the time of trial, was $29,215.63 and held in Hemphill's escrow account. We agree with appellant that appellee should be limited to recovery of the amount of $16,832.81 placed in escrow by appellant, except for any additional amount of attorney's fees which may bring the amount of recovery by appellee above the amount in the appellant's escrow account. To such extent we sustain appellant's third point of error.

Appellee asserts two points of error, claiming that the trial court erred in failing to award appellee attorney's fees and interest on liquidated amounts owed by CCSA.

Appellee's attorney, Randall Crane, testified at trial regarding the attorney's fees involved in the trial of this case. Crane testified that he had practiced law in Cameron County for twelve years, that appellee hired him in July 1983 for this cause, that he had spent sixty hours on this matter, and that one-third of the amount collected ($9,738.54), or $100 per hour for sixty

hours would be reasonable attorney's fees in this action. Appellee requests the award of attorney's fees only against appellant.

■ Appellant did not contest the reasonableness of appellee's attorney's fees at trial or on appeal. Appellant was claiming an interest in its escrow account by virtue of its purported claim to same under the foreclosure provision of its loan to and default by Valley Truss. Appellant was not a mere contributor to the escrow account but took an active and assertive position that it was entitled to the funds due appellee. Facts stipulated to at trial support an award of attorney's fees. TEX. REV.CIV.STAT. Art. 2226, *repealed by* Act of Sept. 1, 1985, ch. 959, § 9(1), 1985 Tex. Gen.Laws 7218, current version at TEX. CIV.PRAC. & REMS.CODE ANN. § 38.001 (Vernon 1986). We sustain appellee's first point of error.

In its second point, appellee cites TEX. WATER CODE ANN. Art. 54.228(d) (Vernon 1979) as authority for receiving interest from appellant on the amount awarded by the trial court judgment. The provision upon which appellee relies applies only to municipal utility districts, not to savings associations.

■ Prejudgment interest on the liquidated amount due and payable would clearly be allowed against the persons Cornett contracted with from the date the liquidated amount was due until the date of judgment. However, appellee has not appealed the court's decision insofar as it denied him prejudgment interest as against the original contracting parties. Appellee's cross-point for prejudgment interest asserts that it is entitled to prejudgment interest from appellant CCSA. Appellant did not contract with appellee to perform the work. We have held that appellant had no right to the funds as against appellee's claim for payment for his services from the revenue derived from the sale of MUD 2 bonds. Appellant did not acquire the funds from the sale of the bonds until March 9, 1984. Cornett had completed construction in June, 1982. We fail to see how appellee

would be entitled to prejudgment interest from appellant when appellant did not contract for the services, and retained the funds from which appellee was to be paid after the date that appellee's claim for services became due and payable. We note that appellee's cross-point for prejudgment interest against appellant is for the entire period from the date that services became due and payable until the date of judgment. Appellee's second point of error is overruled.

The judgment of the trial court is AFFIRMED as to the liquidated damages of $29,215.63, the amount held in escrow; and REFORMED to limit appellant's liability of the liquidated amount to $16,832.81, the amount contributed to the escrow account by appellant; and REVERSED and REMANDED for a determination of the sole issue of attorney's fees due to appellee by appellant.