**CITY OF LaPORTE, Texas, Appellant,**

v.

**Lonnie TAYLOR d/b/a Preferred Pool Plastering, Appellee.**

**No. 01–91–00146–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 31, 1992.

Charles R. Huber, Jr., Houston, for appellant.

Peter R. Bradie, Bradie, Bradie & Bradie, Houston, for appellee.

Before DUGGAN, WILSON and MIRABAL, JJ.

## OPINION

MIRABAL, Justice.

This is an appeal from a judgment rendered in favor of appellee Lonnie Taylor d/b/a Preferred Pool Plastering (Taylor), based upon a mechanic's and materialman's lien filed against the City of LaPorte, Texas (the City), in connection with a public works project. We reverse and render a take-nothing judgment in favor of the City.

The parties submitted a stipulated statement of facts to the trial court. In reviewing a case tried on an agreed statement of facts, this Court's considerations are limited to the correctness of the trial court's application of the law to the admit-ted facts; we are without authority to draw any inference or find any facts not encompassed in the agreement unless, as a matter of law, such further inference or fact is necessarily compelled by the agreed facts. *Cameron County Sav. Ass'n v. Cornett Constr.*, 712 S.W.2d 580, 581–82 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); *Guzman v. Acuna*, 653 S.W.2d 315, 317 (Tex.App.—San Antonio 1983, writ dism'd).

The following stipulated facts are relevant to this case:

On January 19, 1988, the City and Crystal Pools Company, Inc. (Crystal), entered into a contract to build a public swimming pool, known as the "Little Cedar Bayou Park Package II—Swimming Pool," a $372,610 project. On January 19, 1988, Crystal posted a payment and performance bond, as required by statute, with Texas Insurance Company (Texas Insurance) as the surety. Crystal subcontracted with Taylor to provide certain materials and labor for part of the pool construction. By October 14, 1988, Crystal had defaulted on its performance under the contract and Texas Insurance took over direction of the project. Crystal owed Taylor $9,093.21 for labor and materials provided up to that point. Texas Insurance instructed Taylor to discontinue his work on the project, which he did.

On November 18, 1988, Taylor gave notice to the City, Texas Insurance, and Crystal of his outstanding claim for labor and materials provided on the project. The City received notice of Taylor's claim on that same day and, at that time, held funds on the project in excess of the amount of Taylor's claim. By February 20, 1989, Taylor had only received $1000 in payment of his claim from Texas Insurance.

Taylor filed suit on March 3, 1989, naming Texas Insurance and the City as defendants. He did not join Crystal at that time because it had filed for bankruptcy reorganization on October 17, 1988. Taylor subsequently joined Crystal when the bankruptcy petition was dismissed on October 4, 1989.

On September 14, 1989, Texas Insurance was placed under temporary receivership at the request of the Texas Commissioner of Insurance due to insolvency. The City was left with the uncompleted project and had to spend an amount in excess of the funds it had retained as of November 18, 1988. By April 15, 1990, the City spent $45,000 more than the original contract price to get the project completed, but had not sued Crystal or Texas Insurance to recover that amount.

Taylor's suit sought to perfect an equitable lien against the project funds under the provisions of subchapter J of the Texas Property Code, TEX.PROP. CODE ANN. § 53.-232 (Vernon 1984) and article 5160(A)(b) of the Texas Revised Civil Statutes. The City affirmatively pled sovereign immunity and that Taylor was not entitled to an equitable lien because there was an exclusive statutory remedy against Crystal, the principal, and Texas Insurance, the surety.

The trial court granted an interlocutory summary judgment against both Texas Insurance and Crystal. A trial was thereafter conducted on stipulated facts; the trial court granted a judgment stating the City, Texas Insurance, and Crystal would be "jointly and severally liable [to Taylor] for the sum of $8,093.21, plus prejudgment interest ... from October 14, 1988 ... plus postjudgment interest...."; and Taylor was awarded attorney's fees of $9,000 from the City, $2,945 from Crystal, and $4,755 from Texas Insurance.

In its sole point of error, the City asserts the trial court erred in "holding the City jointly and severally liable with the prime contractor and the surety on a public works contract in excess of $25,000," because: 1) the City has sovereign immunity, and 2) the exclusive statutory remedy under article 5160 bars an implied cause of action or the imposition of an equitable lien against public funds. TEX.REV.CIV.STAT.ANN. art. 5160.[1]

Taylor replies that the issue before this Court is whether he or the City had greater right to the retained funds on November 18, 1988. Taylor contends that, had the contract been less than $25,000, or had the City failed to secure a bond, Taylor would have had the greater right to the funds as a matter of law. Taylor asserts this is a case of first impression because there are no cases where the surety on the bond has become insolvent and article 5160 does not address the issue.

Mechanic's liens can only be created against public buildings and grounds when the right is *expressly* conferred by the statutes. *Atascosa County v. Angus*, 83 Tex. 202, 18 S.W. 563, 564 (1892); *Cameron County Sav. Ass'n*, 712 S.W.2d at 583. As a matter of public policy, liens are not permitted on public improvements where payment and performance bonds are required. *Quincy Lee Co. v. Lodal & Bain Engineers*, 602 S.W.2d 262, 264 (Tex. 1980); *Cameron County Sav. Ass'n*, 712 S.W.2d at 583. The Texas Constitution expressly provides for the exemption of public property from forced sale. TEX. CONST. art. XI, § 9.

Generally, in construction contracts, in the absence of an express agreement to the contrary, a subcontractor is not in privity with the owner and must look to the general contractor alone for payment, while the owner is liable for payment only to the general contractor. *Corpus Christi v. Acme Mechanical Constr.*, 736 S.W.2d

---

1. All of the actions giving rise to the lawsuit occurred in 1988. Article 5160 was amended in 1989. The pre–1989 statute provided, in pertinent part:

    A. Any ... corporation ... entering into a formal contract in excess of $25,000 with any ... municipality of this State ... shall be required before commencing such work to execute to the [municipality] the statutory bonds.... Each such bond shall be executed by a corporate surety ... duly authorized to do business in this State.... [T]he bonds shall be payable to the [municipality] and shall be approved by it as to form. Any bond furnished by any prime contractor in an attempted compliance with this Act shall be treated and construed as in conformity with the requirements of this Act as to the rights created, limitations thereon, and remedies provided.

    Acts of June 16, 1977, 65th Leg., R.S., ch. 809, § 1, 1977 Tex.Gen. Laws 2027, *amended by* Acts of June 16, 1989, 71st Leg., R.S., ch. 1138, § 38, 1989 Tex.Gen. Laws 4693, 4704, *amended by* Acts of June 6, 1991, 72nd Leg., R.S., ch. 242, § 11.29, 1991 Tex.Gen. Laws 939, 1067.

894, 897 (Tex.App.—Corpus Christi 1987, writ denied). A subcontractor on a public building is prohibited from asserting a mechanic's lien, the normal remedy available to him on private construction projects. *Id.* Under TEX.PROP.CODE ANN. § 53.231 (Vernon 1984), a subcontractor may claim a statutory lien on money due the general contractor for public improvements where the prime contract does not exceed $25,000, but where the contract exceeds $25,000, no such statutory lien attaches to retained funds. *Corpus Christi v. Heldenfels Bros.*, 802 S.W.2d 35, 40–41 (Tex.App.—Corpus Christi 1990), *aff'd*, 832 S.W.2d 39 (1992); *Barfield v. Henderson*, 471 S.W.2d 633, 636–37 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n.r.e.). Taylor, therefore, is claiming an equitable lien, based on an unjust enrichment theory.

■■■ Article 5160, entitled "Contractor's Bond for Performance and Payment for Labor and Material," provides the only procedure and remedy for presenting claims where the contract exceeds $25,000. *Bunch Elec. Co. v. Tex–Craft Builders, Inc.*, 480 S.W.2d 42, 45 (Tex.Civ.App.—Tyler 1972, no writ); TEX.CIV.STAT.ANN. art 5160 (Vernon 1987). The legislative purpose of article 5160 is to protect claimants who furnish labor and materials in the construction of public works, since no lien can exist against public works, and to provide a simple and direct method of giving notice and perfecting such claims. *Baxter Constr. Co. v. Hou–Tex Prod., Inc.*, 718 S.W.2d 355, 357 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). Article 5160 is highly remedial in nature and courts should construe it liberally to accomplish its purposes. *Id.* at 358.

■■ We are aware of three cases dealing with a factually similar situation, all arising out of the same public works contract. However, in those cases, the surety company did not exist, and the bonds were fraudulent from the beginning (while in the present case, the surety company existed at the time the bonds issued, but it subsequently became insolvent).

In *Corpus Christi v. S.S. Smith & S. Masonry*, 736 S.W.2d 247 (Tex.App.—Corpus Christi 1987, writ denied), *Acme Mechanical Contractors*, 736 S.W.2d at 906, and *Heldenfels Brothers*, 802 S.W.2d at 41, the Corpus Christi Court of Appeals reversed judgments in favor of the subcontractors and found the subcontractors could not proceed against the City for quantum meruit, implied contract, negligent failure to secure a payment bond, or unjust enrichment.

In *Heldenfels*, the supreme court specifically held that, although the pre–1989 amendment version of article 5160 imposed a statutory duty on the governmental authority to ensure the prime contractor posted a sufficient payment bond, it did not impose liability for a breach of that duty and no tort action arose from the City's failure to secure a valid payment bond. *Heldenfels*, at 41. Similarly, in the present case, the City cannot be held liable when the surety for the payment bond becomes insolvent. In the absence of an explicit statutory provision, the city is not liable in these cases, even though the subcontractor is left unprotected. *Id.*

We hold Taylor did not have an equitable lien on the retained funds held by the City. Accordingly, we sustain the City's sole point of error.

We reverse the trial court's judgment to the extent it imposes any liability on the City of LaPorte, Texas, and we render judgment that Taylor take nothing against the City.

WILSON, Justice, concurring.

The appellee sued the City of LaPorte in the trial court under what I believe to be a single theory of recovery. The appellee's second amended petition stated in paragraph VII:

TEXAS INSURANCE's default upon the Payment Bond has placed Plaintiff in the same position as if the CITY had initially failed to secure a Payment Bond. Plaintiff is therefore entitled to maintain his action against the CITY in accordance with TEX.REV.CIV.ANN. art. 5160(A)(b) (Vernon 1987). Failure to allow such action would be wholly inequitable and

would leave Plaintiff without the remedies and protection that has been granted to mechanics and materialmen by the State of Texas since 1865.

The majority states in its opinion that, "Taylor (the subcontractor and appellee) is claiming an equitable lien, based on an unjust enrichment theory." Op. at 832. I find no such cause of action pled in appellee's active trial petition, nor do I find where the trial judge granted relief on any such theory. The appellee asked for relief in the trial court specifically on a statute that was not law when appellee's cause of action arose. Recovery on the former statute applicable to these facts has been specifically rejected by the supreme court. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 42 (1992).

I join in the majority's opinion to the extent that it is limited to the holding that the appellee's cause of action *as pled* will not support a recovery under the law of the State of Texas. I do not join in the implication or holding, if any, in the majority's opinion that suggests, under the facts of this case, that an unpaid subcontractor's *sole and exclusive* remedy is filing suit on the payment bond in the event of the general contractor's default and inability to pay a just and due obligation. I do not believe the law supports the City's claim of sovereign immunity protecting it from liability under any type of theory of recovery under these facts.