IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00388-CV

 

LA ASH, INC.,

                                                                                    Appellant

 v.

 

TEXAS A&M UNIVERSITY,

                                                                                    Appellee

 

 

 



From the 85th District Court

Brazos County, Texas

Trial Court No. 06-002696-CV-85

 



MEMORANDUM  Opinion



 

In this interlocutory appeal, LA Ash, Inc.,
appeals the grant of Texas A&M University’s plea to the jurisdiction.  LA
Ash contends in two issues that the trial court abused its discretion in dismissing
its suit against A&M.  We must decide if LA Ash affirmatively demonstrated
that Texas Government Code chapter 2253, commonly called the McGregor Act,
which establishes a waiver of sovereign immunity for “public works contracts,”
applies to a contract for the removal and disposal of contaminated water and
residue in ponds.  See Tex. Gov’t
Code Ann. ch. 2253 (Vernon 2008).

Background

Texas A&M solicited bids from various
contractors to clean the pond at its fire-training school because over the
years run-off containing residue from fire retardants had accumulated in the
pond.  A&M hired EOG Environmental Inc. (EOG) to facilitate the clean-up
project, and the parties entered into a contract in excess of $25,000.  EOG
then hired IDS, a subcontractor, who hired LA Ash to supply dry ash.  IDS did
not pay LA Ash for its labor and materials provided for the project.  LA Ash
sent notice to EOG and A&M, claiming that under chapter 2253 of the Texas
Government Code, it was owed $44,423.70.

LA Ash filed suit claiming that the contract
between A&M and EOG was a public works contract.  If the project was a
public-works contract under chapter 2253, A&M would have needed to secure a
payment bond and LA Ash would have been a payment-bond beneficiary because it
supplied labor and materials on the project.  It is undisputed that A&M did
not secure a payment bond.  A&M claims that it is immune from suit and
filed a motion to dismiss for lack of jurisdiction supported by affidavit testimony
and documentary evidence.  The trial court granted the motion, and LA Ash now
brings this interlocutory appeal.

Standard of Review








A plea to the jurisdiction challenges the trial
court’s authority to determine the subject matter of the action.  Texas Dep’t Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999).  Whether the
trial court has subject-matter jurisdiction is a question of law that we review
de novo.  Texas Natural Resource Conservation Comm’n v. IT-Davy,
74 S.W.3d 849, 855 (Tex. 2002).  The plaintiff has the burden of alleging facts
that affirmatively establish the trial court’s subject-matter jurisdiction.  Texas Ass’n Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993).  In determining whether jurisdiction exists, we accept the allegations in the
pleadings as true and construe them liberally in favor of the plaintiff.  Texas Dep’t Parks & Wildlife v. Miranda, 133 S.W.3d 217, 227 (Tex. 2004).

Public Works Contract 

In its first issue, LA Ash addresses whether the
Texas A&M-EOG contract was a public-works contract under the McGregor Act.

The McGregor Act governs public-work performance
and payment bonds and covers contracts with governmental entities, requiring
general contractors to execute payment and performance bonds to the
governmental entity before commencing construction.  See generally Tex. Gov’t Code Ann. §§ 2253.001,
2253.073, 2253.021 (Vernon 2008).

The Texas legislature promulgated the McGregor Act
to provide subcontractors and suppliers involved in public-work contracts a
basis for recovery because a subcontractor or a supplier cannot place a lien
against a public building.  See Redland Ins. Co. v. Sw. Stainless, L.P.,
181 S.W.3d 509, 511 (Tex. App.—Fort Worth 2005, no pet.); Capitol Indem.
Corp. v. Kirby Rest. Equip. & Chem. Supply Co., 170 S.W.3d 144, 147
(Tex. App.—San Antonio 2005, pet. denied); Ybanez v. Anchor Constructors,
Inc., 489 S.W.2d 730, 739 (Tex. Civ. App.—Corpus Christi 1972, writ ref'd
n.r.e.).  The McGregor Act is intended to be a simple and direct method for
claimants who supply labor and materials in the construction of public works to
give notice and perfect their claims.  Tex. Dep't of Mental Health &
Mental Retardation v. Newbasis Cent., L.P., 58 S.W.3d 278, 280 (Tex. App.—Fort
Worth 2001, pet. dism'd by agr.) (citing City of LaPorte v. Taylor, 836
S.W.2d 829, 832 (Tex. App.—Houston [1st Dist.] 1992, no writ)).  Texas courts have long recognized that the McGregor Act is highly remedial and should
receive the most comprehensive and liberal construction possible to achieve its
purposes.  Id. at 280 (citing Ramex Constr. Co. v. Tamcon Servs., Inc.,
29 S.W.3d 135, 139 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (op. on
reh'g), City of Laporte, 836 S.W.2d at 832, and United Benefit Fire
Ins. Co. v. Metro. Plumbing Co., 363 S.W.2d 843, 847 (Tex. Civ. App.—El Paso
1962, no writ)).

The McGregor Act requires a governmental entity entering
into a public-work
contract with a prime
contractor for more than $25,000 to obtain a payment bond from the prime contractor.  See
Tex. Gov’t Code Ann. §
2253.021(a).  A governmental entity that fails to obtain a payment bond from a prime contractor for a project is
subject to the same liability that a surety would have if the surety had issued
a payment bond
on the project.  See id. § 2253.027.

Section 2253.001 defines “public work contract,”
but it does not define “public work.”  The heart of LA Ash’s argument is that
the contract to clean up the pond was a contract for "public work.”  Id. § 2253.001. 
LA Ash specifically argues that because A&M, as a governmental entity,
failed to obtain a payment
bond from EOG, a prime contactor, when the two entered into a public-work
contract, Texas A&M is directly liable to LA Ash for its
services and material provided for the project.  The question we are called
upon to answer is whether the remediation of a pond is within the definition of
“public work” as intended by the McGregor Act.  Id. § 2253.021

In viewing the caselaw, we know that a public-work
contract does not include all contracts entered into by a governmental entity. 
A “public work” in the McGregor Act has been limited to traditional
construction projects involving the development or repair of a building.  See
e.g., C. Green Scaping, L.P. v. Westfield Ins. Co., 248 S.W.3d
779, 780 (Tex. App.—Fort Worth 2008, no pet.) (public work contract to
reconstruct a portion of a street); Lab. Design & Equip., Inc. v. Brooks
Dev. Auth., --- S.W.3d ---, ---, 2008 Tex. App. LEXIS 3 at *2 (Tex. App.—San Antonio Jan. 2, 2008, no pet.) (public-work contract to remodel city building); Scoggins
Constr. Co. v. Dealers Elec. Supply Co., --- S.W.3d ---, ---, 2007 Tex.
App. LEXIS 9874 at *1 (Tex. App.—Corpus Christi Dec. 20, 2007, pet. denied)
(public work contract to build elementary school); Capitol Indem. Corp.,
170 S.W.3d at 146 (public-work contract to make additions and renovations to a
school district building); Newbasis Cent., 58 S.W.3d at 279 (public work
contract to build precast concrete above-ground storage tank and accessories); Graham
v. San Antonio Machine & Supply Corp., 418 S.W.2d 303, 306 (Tex. Civ.
App.—San Antonio 1967, writ ref’d n.r.e.) (public-work contract to construct
water supply system and treatment plant); see also Black's Law Dictionary 1639 (8th ed.
2004) ("public works. Structures (such as roads or dams) built by the
government for public use and paid for by public funds.").  Moreover, Texas courts have expressly held that the definition of public work does not include a
contract with a county to prepare and deliver a map, plat-book system, or a
contract to develop and implement a records-retention schedule, a disaster-recovery
plan, and a storage solution for old records.  Employers' Casu. Co. v.
Stewart Abstract Co., 17 S.W.2d 781 (Tex. Comn'n App. 1929, judgm't adopted);
Acratod Co. v. Housing Auth. for City of Houston, 1999 Tex. App. LEXIS 889,
1999 WL 82450 (Tex. App.—Houston [1st Dist.] Feb. 11, 1999, no writ).

In Employers Casualty, the court discussed the
meaning of "public work.”  Under the McGregor Act, the court determined
that a contract with a county to prepare and deliver a map, plat book system,
and delinquent tax list was not "for the construction of any public
building, or the prosecution and completion of any public work."  Employer’s
Casualty, 17 S.W.2d at 782.  The court observed that while construction of
a county road is a public work, it can hardly be said that a contract for the
purchase of a road grader would be a public work.  Id.  In construing
the Texas Public Bid Law article 1560, the predecessor to chapter 2253, the
Commission of Appeals stated:

Not every contract entered into, and every work
undertaken by the state, county, municipality, or other agency enumerated in
the statute is necessarily, in the broadest sense, a “public work”, for such
agencies are public agencies and act only for the public.  But obviously the
words “public work” were not used in that broad sense, for that would make the
statute applicable to every contract of whatsoever character, a conclusion at
once unreasonable.  The “public work” contemplated was meant to embrace those
contracts akin to building contracts.

 

Id.

Although Employers’ Casualty was interpreting
the predecessor to chapter 2253, other language in chapter 2253 supports the
articulation in Employer’s Casualty.  The words "construction” or “repairing"
indicate structural work.  Tex. Gov’t
Code Ann. 2253.001(4); 2253.021(g).  Moreover, the word "contractor"
is used throughout the code.  This term is often used in building contracts,
but is not used in those contracts that are essentially for services, supplies,
equipment, and the like.  See Employer’s Casualty, 17 S.W.2d at
782.

LA Ash argues that Newbasis stands for the
proposition that environmental remediation projects, like the one between EOG
and Texas A&M, involve public work, but the contract there involved the
construction and installation of a permanent concrete storage tank.  Newbasis Cent., 58 S.W.3d at 279.  Newbasis is thus distinguishable because it
involved the construction of a permanent fixture, which has been recognized as coming
within the scope of a public-work contract.  See Overstreet v. Houston
County, 365 S.W.2d 409, 412 (Tex. Civ. App.—Houston 1963, writ ref'd
n.r.e.) (bond required for central system air conditioners installed as fixtures
or improvements of fixed nature).  The contract between A&M and EOG to
clean up the pond was for the performance of a service, not the construction or
installation of a fixture.

The materials that IDS purchased from LA Ash were
incident to the service EOG was providing to Texas A&M.  The materials were
not used for the "construction" or "repair" of a public
building or public work because they were not used for the repair or improvements
of a public building.

We acknowledge that the McGregor Act is to be
construed liberally, but we hold that the McGregor Act does not apply in this
case.  See Redland Ins. Co. v. Sw. Stainless, L.P., 181 S.W.3d 509,
512 (Tex. App.—Fort Worth 2005, no pet.) (liberally construing McGregor Act to
require only substantial compliance with Act’s notice requirements).  The
weight of out-of-state authority indicates that a contract for pond clean-up is
not within the intendment of statutory requirements for a public-work
contract.  See Wallace Stevens, Inc. v. Lafourche Parish Hosp. Dist. No. 3,
323 So.2d 794, 796 (La. 1975) (citing several non-Texas cases for the proposition
that public utility contract is not public-work contract), superseded by
statue as recognized in Barabay Prop. Holding Corp. v. Boh Bros. Constr.
Co., L.L.C., --- So.2d ---, ---, 2008 La. App. LEXIS 722 at *2 (La. App.
1st Cir. May 2, 2008) (removal of excavated soil not recognized within definition
of a public-work contract); Modern Transit-Mix, Inc. v. Michigan Bell Tel.
Co., 130 Mich. App. 300, 343 N.W.2d 14, 15 (Mich. Ct. App. 1983) (laying
telephone cables under city sidewalks not included in Michigan version of
McGregor Act); see also Russell
G. Donaldson, Annotation, What Constitutes "Public Work" Within
Statute Relating to Contractor's Bond, 48 A.L.R.4th 1170 (1987); 64 Am.Jur.2d
Public Works and Contracts, § 47, p. 899 (1972).

The purpose of section 2253.021 is to protect
contractors and subcontractors that enter into construction contracts to
construct, alter, or repair public structures or work because they are unable
to obtain liens on the relevant public property.  Interpreting this statute to
include service contracts, such as cleaning ponds, would improperly expand the
reach of this statute.  We conclude that the contract between Texas A&M and
EOG does not fall within the purview of "public work" or the
definition of "public work contract" for purposes of chapter 2253. 
Therefore, the trial court did not err in dismissing LA Ash’s case for lack of
jurisdiction.  We overrule LA Ash’s first issue.

Discovery 

In its second issue, LA Ash argues that the trial
court erred by refusing to permit it to conduct discovery to develop evidence necessary
to the jurisdictional issues.  As noted above, whether the trial court has
subject-matter jurisdiction is a matter of law.  IT-Davy,
74 S.W.3d at 855.  When a plea to the jurisdiction challenges the pleadings, we
determine if the facts alleged affirmatively demonstrate the court’s
jurisdiction to hear the case.  DART v. Thomas, 168 S.W.3d 322, 324-25 (Tex. App.—Dallas 2005, pet. denied) (citing Miranda, 133 S.W.3d at 226).  “When the
consideration of a trial court's subject matter jurisdiction requires the examination
of evidence beyond the allegations in the pleadings, the trial court exercises
its discretion in deciding whether the jurisdictional determination should be
made at a preliminary hearing or await a fuller development of the case,
mindful that the determination of whether subject matter jurisdiction exists
must be made as soon as practicable.”  Miranda, 133 S.W.3d at 227.

LA Ash had the burden of showing an affirmative
waiver of sovereign immunity.  Dallas Area Rapid Transit v. Whitley,
104 S.W.3d 540, 542 (Tex. 2003).  The trial court reviewed the facts presented
by LA Ash in its petition, assumed those facts were true, and determined that
it was without jurisdiction to hear the case.  LA Ash has not shown how
discovery would have established that the contract between Texas A&M and
EOG was more than a contract for the clean up of the pond at the fire school. 
Moreover, A&M was a party to the lawsuit thirteen months before the suit
was dismissed, giving LA Ash ample time to discover facts necessary to
establish subject matter jurisdiction.  

Here it is apparent from the face of the pleadings
that Texas A&M was immune from the suit.  Because LA Ash has not shown how
discovery or evidence could establish that the trial court had jurisdiction,
when the pleadings establish otherwise, we cannot say that trial court abused
its discretion in refusing to allow discovery.  See Harris Cty. v. Sykes,
136 S.W.3d 635, 639 (Tex. 2004) (trial court may dismiss suit filed against governmental
entity when it is apparent from pleadings that governmental entity is immune). 
We overrule LA Ash’s second issue.

Conclusion 

Because we find neither legislative consent nor a
statutory exception to sovereign immunity, we cannot say the trial court erred
in dismissing LA Ash's suit.  See Dallas Metal Fabricators, Inc. v. Lancaster Indep. Sch. Dist., 13 S.W.3d 123 (Tex. App.—Dallas 2000 pet. denied).  We
affirm the trial court’s order.

 

 

BILL VANCE

Justice

 

Before Chief Justice
Gray,

            Justice
Vance, and

            Justice Reyna

Affirmed

Opinion delivered and
filed October 29, 2008

[CV06]