**CITY OF CORPUS CHRISTI,**
**Appellant,**

v.

**HELDENFELS BROTHERS,**
**INC., Appellee.**

**No. 13–90–063–CV.**

Court of Appeals of Texas,
Corpus Christi.

Dec. 6, 1990.

Rehearing Overruled Jan. 10, 1991.

Carol Estes Bray, Legal Dept., Corpus Christi, for appellant.

Andrew J. Lehrman, Corpus Christi, for appellee.

Before NYE, C.J., and DORSEY and KEYS, JJ.

## OPINION

DORSEY, Justice.

The City of Corpus Christi (City) appeals from a judgment rendered against it and in favor of Heldenfels Brothers, Inc. (Heldenfels), on a claim for the value of materials and services furnished by Heldenfels under a subcontract for use in a City recreation center building. After a bench trial, based on theories of quantum meruit, unjust enrichment and negligent failure of the City to require its general contractor to provide a proper payment bond, the trial court rendered judgment for Heldenfels for the reasonable value of its materials and services in the amount of $23,250, plus interest and attorney's fees. The City appeals by nineteen points of error, while Heldenfels brings one cross-point. We reverse the judgment of the trial court and render judgment that Heldenfels take nothing.

On May 18, 1983, the City hired La–Man Constructors, Inc., (La–Man) as general contractor to build improvements on City park land for the Meadow Park Recreation Center. The general contract provided for a lump-sum payment to La–Man of $267,-748.00, and La–Man agreed to provide the standard performance and payment bonds by corporate sureties duly authorized to do business in Texas, as required by the City on all such contracts in accordance with the MacGregor Act. Tex.Rev.Civ.Stat.Ann. art. 5160 (Vernon Supp.1990). La–Man provided documents which facially appeared to be the required bonds. Although the City accepted these purported bonds after only a cursory review procedure, it later discovered after La–Man abandoned the project, that the bonding company did not exist and that the bonds were fraudulent.

La–Man hired Heldenfels as subcontractor for $26,000.00 to provide concrete T-beams to support the roof covering the recreation center. Heldenfels constructed the T-beams, delivered them to the project, and completed all of its responsibilities under the subcontract before the end of October 1983. During the course of the project, the City made monthly payments to La–Man for the work completed, while retaining 10% until final completion of the project. La–Man's own estimates as provided to the City listed $32,500.00 as the amount of its general contract price allocated for the T-beams. On October 5, 1983, the City authorized a payment to La–Man for the T-beams of $29,250.00 (not including $3,250.00 for retainage).

However, on October 11, 1983, a City inspector first noticed what appeared to be cracks in the T-beams. The City called a meeting with La–Man to discuss the problem on October 28, 1983, at which representatives from Heldenfels also appeared. In addition, in accordance with the general contract, the City retained $20,000.00 from La–Man's next payment in November 1983, in order to protect itself against the possibility of defects. After several engineers examined the structure and submitted reports exonerating Heldenfels, the City abandoned its inquiry into possible defects in the T-beams in April 1984.

Meanwhile, on December 1, 1983, La–Man unexpectedly abandoned the project and is now in bankruptcy proceedings, leaving Heldenfels and other subcontractors unpaid. In February 1984, the City hired a new general contractor, Black Brothers (B & B), to complete the project for $83,-000.00. During the interim period between general contractors, the City did little to advance the project aside from maintaining the structure and hiring one of the subcontractors under separate agreement to complete minor repair work on the roof for $300.00. B & B substantially completed the project on June 22, 1984. The City claimed a number of incidental expenses associated with La–Man's walkout and liquidated damages for delay in completion, leaving only $2,184.00 in excess funds which the City acknowledges may be due to La–Man.

The present suit is one of several to reach this court brought by subcontractors on the Meadow Park Recreation Center project seeking payment from the City. *See City of Corpus Christi v. Acme Mechanical Contractors, Inc.*, 736 S.W.2d 894 (Tex.App.—Corpus Christi 1987, writ denied); *City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.*, 736 S.W.2d 247 (Tex.App.—Corpus Christi 1987, writ denied). Generally in construction contracts, in the absence of an express agreement otherwise, a subcontractor is not in privity with the owner and must look to the general contractor alone for payment, while the owner is liable for payment only to the general contractor. *City of Corpus Christi v. Acme Mechanical Contractors, Inc.*, 736 S.W.2d 894, 898 (Tex.App.—Corpus Christi 1987, writ denied). In addition, as a matter of public policy, liens are not generally permitted on public improvements where payment and performance bonds are required. *See Quincy Lee Co. v. Lodal & Bain Engineers*, 602 S.W.2d 262, 264 (Tex.1980); *Cameron County Savings Association v. Cornett Construction Co.*, 712 S.W.2d 580, 583 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); *Barfield v. Henderson*, 471 S.W.2d 633, 636–37 (Tex. Civ.App.—Corpus Christi 1971, writ ref'd n.r.e.); Tex.Rev.Civ.Stat.Ann. art. 5160 (Vernon Supp.1990).

Because the City had no direct contractual obligation with Heldenfels to pay for the T-beams, nor was the City's property encumbered by a mechanic's lien, Heldenfels, in order to recover, had to rely on some other theory of liability. Heldenfels chose the theories of implied contract and negligence against the City. The trial court returned numerous findings and conclusions against the City on grounds of quantum meruit, unjust enrichment and negligent failure to require La–Man to provide a proper payment bond. By its nineteen points of error the City challenges each of the three grounds upon which the trial court granted judgment for Heldenfels. Heldenfels complains by its cross-point that the trial court erred in failing to award it the full $26,000 amount of its subcontract with La–Man.

By points of error one through five the City challenges recovery based on the theory of quantum meruit. Specifically, by points one and two the City challenges the legal and factual sufficiency of the evidence to show that the circumstances reasonably notified the City that Heldenfels was expecting to be paid by it. The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards applied in reviewing sufficiency of the evidence to support a jury answer. *Okon v. Levy*, 612 S.W.2d 938, 941 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.).

■ Quantum meruit is an action independent of any contract, based on an implied agreement to pay for benefits rendered and knowingly accepted. *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex.1990); *City of Corpus Christi v. Acme Mechanical Contractors, Inc.*, 736 S.W.2d 894, 898 (Tex.App.—Corpus Christi 1987, writ denied); *Hoffman v. Deck Masters, Inc.*, 662 S.W.2d 438, 441 (Tex.App.—Corpus Christi 1983, no writ). The elements of quantum meruit are: 1) valuable services or materials were furnished; 2) for the person sought to be charged; 3) these services or materials were accepted, used and enjoyed by that person; 4) under such circumstances as reasonably notified that person, that the plaintiff, in performing such services, was expecting to be paid by him. *Vortt*, 787 S.W.2d at 944; *Bashara v. Baptist Memorial Hospital System*, 685 S.W.2d 307, 310 (Tex.1985); *City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.*, 736 S.W.2d 247, 248 (Tex.App.—Corpus Christi 1987, writ denied); *Acme*, 736 S.W.2d at 898.

The City contends that there was no evidence to show that Heldenfels reasonably notified it at the time Heldenfels provided the T-beams and they were incorporated into the project that Heldenfels would look to the City for payment if La–Man defaulted. Heldenfels never actually informed the City that it expected to be paid by it before La–Man abandoned the project. Heldenfels relies upon the testimony of two of its employees to show that the City knew before Heldenfels provided the T-beams that it would look to the City for payment.

Kurt Schriefer, who prepared Heldenfels' cost and price estimate for the Meadow Park project, testified that the City accepted, used and enjoyed the T-beams in question "under such circumstances as Heldenfels Brothers reasonably notified the City that they expected the City to pay for that work." Schriefer, however, never reveals what those circumstances were that supposedly notified that City that Heldenfels would look to it for payment. In addition, attorney H.C. Heldenfels testified that it is normal to approach the owner for payment when neither the contractor nor the bonding company make payment, and that he would be greatly surprised if the City was not aware of Heldenfels' expectations before it began work on the project.

■ When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983); *Seideneck v. Cal Bayreuther Associates*, 451 S.W.2d 752, 755 (Tex.1970). We hold that the unsubstantiated conclusions and speculation of these Heldenfels employees provides no evidence that the City had notice of Heldenfels' expectation to be paid by it before delivery of the T-beams.

■ Heldenfels additionally relies on the City's subsequent actions as evidence that it assumed the responsibility to pay Heldenfels directly for the T-beams. There is some authority for the proposition that a city's actions in taking over the responsibilities of its general contractor may subject it to liability from the subcontractors. In *City of Ingleside v. Stewart*, 554 S.W.2d 939, 945 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.), for instance, where the city effectively stepped into the shoes of its general contractor by supervising and finishing a project and paying some of the laborers and subcontractors, this court upheld recovery against the city under quantum meruit by other subcontractors subsequently performing work on the project in reliance on the city's apparent control. *See also Prairie Valley Independent School District v. Sawyer*, 665 S.W.2d 606, 610–11 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.). In addition, in *Ingleside* we also found that the city's subsequent request that the subcontractor perform certain repairs on the items it provided constituted a ratification of the city's agreement to pay the subcontractor directly. *Id.* at 947.

■ In the present case, during the interim period after La–Man abandoned the project and before the City contracted with B & B to complete the project, no signifi-

cant work was performed aside from maintenance and repairs, and there is no evidence to suggest that the City assumed the responsibilities of La–Man to the subcontractors. Moreover, unlike *Ingleside* and *Prairie Valley*, Heldenfels itself performed *no work* on the project after the general contractor abandoned it and thus could not have relied upon the City's actions after that date.

Nevertheless, Heldenfels attempted to show that the City later would have held it responsible for faults in the T-beams, and that the City thereby assumed responsibility to pay Heldenfels directly for the T-beams. However, though there was a great deal of examination and testimony about what the City might have done if it had found Heldenfels' work to be defective, it is uncontradicted that the City ultimately found that Heldenfels' product was sound and that the City never did assert any claims against Heldenfels or request it to do anything more on the project after La–Man abandoned it. We sustain the City's first and second points of error.

By points of error six through twelve the City challenges the theory of unjust enrichment as the basis for Heldenfels' recovery. Specifically, by points of error eight and ten the City argues that as a matter of law it has not been unjustly enriched, because the City had no legal obligation to pay retained or withheld funds to a subcontractor, and Heldenfels as subcontractor had no lien against funds withheld by the City from the prime contractor.

■■■ It has been said that an action for unjust enrichment will lie where one person has obtained a benefit from another by fraud, duress or taking an undue advantage. *City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.*, 736 S.W.2d 247, 250 (Tex.App.—Corpus Christi 1987, writ denied); *Austin v. Duval*, 735 S.W.2d 647, 649 (Tex.App.—Austin 1987, writ denied); *Barrett v. Ferrell*, 550 S.W.2d 138, 143 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.). In other words, unjust enrichment occurs when the party sought to be charged wrongfully secures a benefit or passively receives one which would be un-

conscionable for him to retain. *S.S. Smith*, 736 S.W.2d at 250; *Barrett*, 550 S.W.2d at 143. It is not a proper remedy merely because it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss to the claimant, or because the benefits to the person sought to be charged amount to a windfall. *See Austin*, 735 S.W.2d at 649; *see also Harris v. Sentry Title Co.*, 715 F.2d 941, 949–51 (5th Cir.1983).

■■■ Unjust enrichment is probably not an independent cause of action but merely characterizes the result whereby one fails to make restitution of benefits under circumstances which give rise to an implied or quasi-contractual obligation to return such benefits. *S.S. Smith*, 736 S.W.2d at 250; *LaChance v. Hollenbeck*, 695 S.W.2d 618, 620 (Tex.App.—Austin 1985, writ ref'd n.r. e.). As such it is one of the criteria to be examined when one seeks an equitable remedy. It is clear that recovery under quantum meruit, for instance, is founded upon the concept of unjust enrichment. *See Vortt*, 787 S.W.2d at 944; *Bashara*, 685 S.W.2d at 310. Some Texas courts have further considered unjust enrichment and quantum meruit to be synonymous. *See LaChance*, 695 S.W.2d at 620; *Berger Engineering Co. v. Village Casuals, Inc.*, 576 S.W.2d 649, 652 (Tex.Civ.App.—Beaumont 1978, no writ).

■■■ However, we see no need to equate or distinguish the two causes of action in the present case, since we hold that Heldenfels' novel theory of unjust enrichment could be supported neither under quantum meruit nor under any separate and independent theory of unjust enrichment. Heldenfels recovered in the trial court under a theory of unjust enrichment based on the retention of certain funds by the City from La–Man under the general contract. Since the City retained these funds specifically because of its concern about possible defects in the T-beams, Heldenfels claimed a right to trace the retained funds to its own entitlement to payment from La–Man for these T-beams under the subcontract.

Under Tex.Prop.Code Ann. § 53.231 (Vernon 1984), a subcontractor may claim a

statutory lien on money due the general contractor for public improvements where the prime contract does not exceed $25,000. In the present case, however, since the prime contract between the City and La–Man exceeds $25,000, no such lien attached to the retained funds. *See Barfield,* 471 S.W.2d at 636–37. Neither should Heldenfels be allowed to establish the equivalent of such a lien by the use of the equitable doctrine of unjust enrichment. *Cf. Barfield,* 471 S.W.2d at 638–39 (where no statutory lien attached to retained moneys in the hands of a governmental authority, equity would not impose such a lien in favor of subcontractors); *see also Corpus Christi Bank and Trust v. Smith,* 525 S.W.2d 501, 504–505 (Tex.1975).

Regardless of the fact that the City may have gained an incidental benefit by Heldenfels' provision of the T-beams and the City's retainage of certain funds from La–Man, and Heldenfels may have suffered a loss by La–Man's failure to make payment under the subcontract, we hold that unjust enrichment may not be used to impose the equivalent of an equitable lien on the funds due under the separate general contract between the City and La–Man. The City's eighth and tenth points of error are sustained.

By points of error thirteen through sixteen the City challenges the theory of negligent failure to require La–Man to secure a proper bond as the basis for Heldenfels' recovery. Specifically, by points of error thirteen and fourteen the City argues that as a matter of law it cannot be held liable for its failure to assure proper bonding because it had no duty other than to approve the form of the bond.

The present dispute concerning the City's failure to secure a proper payment bond from La–Man is governed by Tex.Rev.Civ. Stat.Ann. art. 5160 (Vernon 1987) (repealed) (former article 5160). Former article 5160 provided merely that the prime contractor on contracts in excess of $25,000

entered into with a governmental authority shall be required to execute statutory performance and payment bonds by corporate sureties duly authorized to do business in Texas, and that such bonds shall be approved as to form by the governmental authority.[1]

In *City of Corpus Christi v. Acme Mechanical Contractors, Inc.,* 736 S.W.2d 894 (Tex.App.—Corpus Christi 1987, writ denied), we held that, although former article 5160 imposed a statutory responsibility or duty upon a municipality to ensure that the prime contractor posts a sufficient payment bond, it did not impose any liability for a breach of that responsibility or duty, and therefore no tort action arises from a City's failure to secure a valid payment bond from the prime contractor. *Id.* at 904–906; *see also Greenville Independent School District v. B.J. Excavating, Inc.,* 694 S.W.2d 410, 414 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). In the present case, we follow *Acme* and refuse to recognize a cause of action based on the negligent failure of the City to require La–Man to secure a proper payment bond under former article 5160. The City's thirteenth and fourteenth points of error are sustained.

By points of error seventeen through nineteen the City complains that Heldenfels is not entitled to attorney's fees or prejudgment interest because it is not entitled to recover under any of its theories of liability. In view of our disposition of the City's other points of error denying recovery, we sustain points seventeen through nineteen.

By a single cross-point Heldenfels complains that the trial court erred in failing to award it the full amount of $26,000. In view of our disposition of the City's points of error and our determination that Heldenfels was not entitled to recover under any of its theories, we overrule Heldenfels' sole cross-point of error.

We REVERSE the judgment of the trial court and here RENDER judgment that

---

1. Article 5160 was subsequently amended to provide specifically for liability against a governmental authority which fails to secure a proper payment bond on contracts entered into after the effective date of September 1, 1989. *See* Tex.Rev.Civ.Stat.Ann. art. 5160 (Vernon Supp.1990).

Heldenfels take nothing against the City of Corpus Christi.