# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00663-CV

**Henry E. Chitsey, Appellant**

**v.**

**Jody Lockshin, Individually and Red River North Condominium Association; Niemann & Niemann, L.L.P.; and Larry Niemann, Individually, Appellees**

### FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY
### NO. 239,757, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

Appellant Henry E. Chitsey ("Chitsey") filed suit against appellees for, *inter alia*, violating a temporary injunction, tortious interference with a contract, and violations of the Texas Deceptive Trade Practices—Consumer Protection Act ("DTPA"). *See* Tex. Bus. & Com. Code Ann. §§ 17.41 - .63 (West 1987 & Supp. 2001). Appellees counterclaimed, alleging breach of contract, unjust enrichment, and quantum meruit. The trial court found that appellees had violated the temporary injunction and awarded Chitsey $1 in damages, plus $300 in attorney's fees, but denied recovery on Chitsey's other claims. The court rendered judgment in favor of appellees on their counterclaims and awarded damages in the amount of $11,782.92, plus court costs and attorney's fees. Chitsey appeals. We will affirm the judgment.

# BACKGROUND

Chitsey was the first lienholder of condominium unit 102 ("Unit 102") in the Red River Condominium complex. Since at least 1994, Chitsey's son, Ron Chitsey, had been collecting rent for the unit directly from the tenants pursuant to the assignment of a real estate lien note from the owners of the unit, Warren and Delanie Lundgren.[1] Chitsey also owned another unit in the same complex, Unit 206, and was the first lienholder for Units 207 and 208. In 1984, Chitsey signed a Declaration, which was filed with the deed records for the condominium units.[2] According to the testimony at trial, the Declaration is a contract between the Red River North Condominium Association (the "Association") and the homeowners. This Declaration contained a provision allowing the Association to collect assessment fees as follows:

> 15.    Common Expenses, Assessments - Each Ownership Unit Owner shall be bound and obligated and agrees to pay, as assessments therefor are made during his tenure of ownership, his pro-rata part and share of the expenses of administration, maintenance, repair, upkeep, protection, replacement, and operation of the Common elements, assessments made by the Council of Co-owners[3] and any other expenses lawfully agreed to by the Council of Co-Owners as authorized by the Act, this Declaration or by the By-Laws appended hereto . . . . The amount of common expenses assessed against

---

[1] It is unclear from the record when Ron Chitsey first began collecting rent for the unit; however, the exhibits presented to the trial court indicate that he had been leasing the premises and collecting rent since at least 1994.

[2] The Declaration admitted into evidence at the trial was signed by Ron Chitsey. It states that it applies to Ron Chitsey, as "Owner in fee simple" of the tracts of land described in the Declaration. It is unclear whether the Declaration admitted into evidence applies to any of the units at issue in this case, since neither party alleges that Ron Chitsey is the fee simple owner of any of those units.

[3] According to testimony at trial, "Council of Co-Owners" is used interchangeably with "Red River Condominium Association" and refers to the same entity.

each Unit shall be the debt and obligation of the Ownership Unit Owner at the time the assessment is made.

(Footnote added.)

The Declaration further allowed the Association to obtain a lien to secure unpaid assessments:

> 16. Liens to Secure Assessments - The assessments above described shall be made against the then Ownership Unit Owner personally of each and also against the Ownership Unit itself, and in the event any unit owner shall fail or refuse to pay his pro-rata share and part of the common expenses as the same shall become due and payable, then all such assessments which have become due and payable and which have not been paid shall be assessed against all other Ownership Unit Owners. . . . Such liens shall be prior to all other liens, except that such assessment liens shall be subordinate secondary and inferior to . . . (2) all liens securing amounts due or to become due under any mortgage, vendor's lien or Deed of Trust filed for record prior to the date payment for such assessment for common expenses became due and payable . . . .
>
> Such lien for common expenses herein provided for may be foreclosed, without prejudice and subject to the aforesaid prior and superior liens, by suit by the Council of Co-owners or any authorized officer or member thereof, acting in behalf of all Ownership Unit Owners in like manner as mortgages on real property. No foreclosure suit or sale thereunder shall affect or impair any of the prior liens above mentioned.

Because of delinquent assessments, the Association obtained a lien on Unit 102.

On May 7, 1997, after giving notice, the Association foreclosed on Unit 102 for unpaid homeowner association assessments. The Association purchased the unit at the foreclosure sale. Thereafter, the Association notified the tenants in Unit 102 that all future rents should be paid directly to the Association. The Association then applied the rents to the delinquent assessment fees.

On February 27, 1998, Chitsey filed his original petition against appellees for tortious interference with a contract, alleging that appellees interfered with Chitsey's contract with the Unit

3

102 tenant by directing the tenant to pay rent to the Association rather than to Chitsey.[4] Chitsey also alleged that the Association had represented itself as an incorporated entity in numerous documents and correspondence, even though it had never registered itself as a corporation with the Secretary of State. Based on this allegation, Chitsey accused appellees of violating a temporary injunction previously issued by the trial court[5] and sought a permanent injunction to enjoin the Association from continuing to misrepresent itself as a corporation. Chitsey later amended his petition to include a DTPA claim based on the Association's misrepresenting itself as a corporation.

In December 1998, Chitsey attempted to foreclose on Unit 102 through his son, Ron Chitsey. Thereafter, Ron Chitsey resumed collecting rent from the tenants in Unit 102 from January 1999 through May 1999. Ron Chitsey then recorded the trustee's deed evidencing the foreclosure in June 1999.

Upon receipt of a copy of the trustee's deed, the Association determined that the attempted foreclosure by Ron Chitsey was invalid because Ron Chitsey, not Henry Chitsey, purported to appoint the substitute trustee and foreclose on Unit 102, even though Henry Chitsey was the actual lienholder. Therefore, in June 1999, the Association resumed collecting rent from the tenants in Unit 102.

---

[4] Chitsey also sued appellees for violations of state and federal debt collection laws, unreasonable debt collection practices, breach of contract, recovery of expenses incurred in clearing cloud on title, violating a temporary injunction, and for recovery of payments made to the Association as an incorporated entity.

[5] An order signed by the trial court on January 15, 1999 indicates that a temporary injunction hearing was held on July 16, 1998, and the trial court denied the application for temporary injunction in part and granted it in part. The order enjoins appellees from continuing to refer to the Association as an incorporated entity.

Additionally, appellees responded to Chitsey's suit by filing an answer, alleging that (1) Ron Chitsey's attempted foreclosure of Unit 102 was invalid and enforcement of the note and deed of trust for that unit is barred by limitations, (2) the Association is the sole title holder of Unit 102 due to its enforcement of its lien, (3) Chitsey suffered no damages and was unjustly enriched, (4) the DTPA notice requirements were not satisfied and Chitsey suffered no economic damages as required by the DTPA, and (5) Chitsey had no standing to sue attorneys Niemann & Niemann or Larry Niemann, individually, and furthermore, the attorneys were immune from suit.[6] Appellees further averred that Chitsey benefitted from the Association's upkeep and maintenance of the complex, including Units 102, 206, 207, and 208, and because Chitsey failed to pay the assessments associated with the maintenance, he was liable to appellees for unjust enrichment. Appellees sought damages for the unpaid assessments, plus attorney's fees for breach of the Declaration.

The trial court found in favor of the appellees with regard to their counterclaim and ordered Chitsey to pay damages in the sum of $11,782.92, plus attorney's fees. The court further found that Chitsey was entitled to damages in the amount of $1 for enforcement of the temporary injunction and awarded Chitsey attorney's fees in the amount of $300. All other requested relief was denied.

---

[6] Appellees also performed a second foreclosure on Unit 102 in order to ensure that all foreclosure notices and other documents did not include the term "Inc." following the Association's name. The trustee's deed accurately reflecting the Association's name was filed on July 7, 1998.

5

Chitsey subsequently requested findings of fact and conclusions of law, which do not appear in the record, and moved for a new trial, which the trial court denied. Chitsey now appeals the trial court's judgment.

**DISCUSSION**

We will first address Chitsey's contention that the county court was without jurisdiction to consider "a suit for the enforcement of a lien on land." *See* Tex. Gov't Code Ann. § 26.043(2) (West 1988) ("A county court does not have jurisdiction in: . . . (2) a suit for the enforcement of a lien on land . . . ."). This suit was initiated by Chitsey primarily to recover damages for tortious interference with contract and violations of the DTPA. In order to determine if Chitsey was entitled to enforce the contract between himself and the tenants, it was necessary to determine whether Chitsey's foreclosure was valid. In such cases, the county court may determine title in order to enter judgment on Chitsey's tortious interference with contract claim.

> In actions for a debt or damages, in amounts within the jurisdiction of the county courts, the right of recovery may depend upon the title to land. The court having the power expressly given to determine such right to recover must decide all questions of law and fact upon which its determination depends. Thus the question of title comes incidentally into the case, and must be decided before the court can render judgment settling the claims in dispute. But in doing so it does not adjudicate or settle the title to the land, nor the right to recover it, but simply determines that the plaintiff is or is not entitled to recover the thing sued for within the jurisdiction [of the court].

*Victoria v. Schott*, 29 S.W. 681, 681 (Tex. Civ. App.—Houston 1895, no writ); *accord Fry v. Ahrens*, 256 S.W.2d 115, 116 (Tex. Civ. App.—Galveston 1953, no writ) ("Where the title to land . . . is only incidentally involved in a suit brought to recover damages in an amount within the

6

jurisdiction of the county court, . . . the amount of damages sought, in good faith, to be recovered, is the determinative jurisdictional factor."); *Robinson v. Clymer*, 170 S.W. 107, 108 (Tex. Civ. App.—Dallas 1914, writ dism'd) (same). We conclude that the county court did not exceed its jurisdiction in deciding the validity of Chitsey's attempted foreclosure as a prerequisite to determining liability on Chitsey's claim for tortious interference with a contract.

By his first point of error, Chitsey argues that the trial court erred in rendering judgment against him on his claim for tortious interference with a contract because the appellees judicially admitted that they told the tenants to discontinue paying rent to Chitsey and instead directed them to pay rent directly to the Association, that they intended to publish the letter inducing the tenants not to pay rent to Chitsey, and they stipulated that they began receiving the rental proceeds on June 1, 1997. A party alleging tortious interference with a contract must prove that (1) a contract subject to interference exists, (2) the alleged act of interference was willful and intentional, (3) the willful and intentional act proximately caused damage, and (4) actual damage or loss occurred. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997). Although Chitsey maintains that appellees judicially admitted to intentionally directing the tenants to pay their rent to the Association instead of to Chitsey, Chitsey has failed to address the other elements necessary to sustain his cause of action for tortious interference with a contract.

First, Chitsey did not establish that a contract subject to interference still existed at the time of the alleged interference. On May 7, 1997, the Association performed a non-judicial foreclosure on Unit 102, pursuant to the Declaration. The Association then purchased the unit at the foreclosure sale. The trustee's deed reflecting the foreclosure sale was filed May 13, 1997 in the Real Property Records of Travis County. Once the Association became the owner of Unit 102, Chitsey

7

was no longer entitled to collect the rent from that unit. The foreclosure sale terminated any lease between the original owner and the tenants, and therefore Chitsey was no longer entitled to collect pursuant to that lease. *See ICM Mortgage Corp. v. Jacob*, 902 S.W.2d 527, 533 (Tex. App.—El Paso 1994, writ denied). In other words, at that point in time, a contract subject to interference ceased to exist.

Moreover, Chitsey is unable to direct this Court to evidence indicating that appellees' actions proximately caused him damage. At trial, appellees produced Karen Coffee, the manager of the complex, as a witness. Coffee testified that after the Association began collecting rent from Unit 102, the Association applied that rent to the outstanding homeowner assessment fees. Thus, Chitsey was not damaged by the Association's collection of the rent. Chitsey's first point is overruled.

By his second point, Chitsey argues that the trial court abused its discretion in awarding attorney's fees in the amount of only $300. The trial court awarded Chitsey attorney's fees for enforcing the temporary injunction. Chitsey argues that the trial court abused its discretion in limiting the attorney's fees to the fees associated with enforcement of the temporary injunction because the issues litigated at trial, including the tortious interference with contract and DTPA claims, were so "interrelated as to be inseparable."

A party may not recover attorney's fees for claims on which the party did not prevail. *Hartford Cas. Ins. Co. v. Budget Rent-A-Car Sys., Inc.*, 796 S.W.2d 763, 772 (Tex. App.—Dallas 1990, writ denied). A party seeking attorney's fees usually has a duty to segregate nonrecoverable fees from recoverable fees. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10-11 (Tex. 1991); *Stamp-Ad, Inc. v. Barton Raben, Inc.*, 915 S.W.2d 932, 937 (Tex. App.—Houston [1st Dist.] 1996, no writ). However, there is an exception to this duty—when the attorney's fees rendered are in

connection with claims arising out of the same transaction and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts. *Stewart Title*, 822 S.W.2d at 11; *Stamp-Ad*, 915 S.W.2d at 937-38. Therefore, when the causes of action involved in the suit are dependent upon the same set of facts or circumstances and thus are "intertwined to the point of being inseparable," the party suing for attorney's fees may recover the entire amount covering all claims. *Stewart Title*, 822 S.W.2d at 11. Whether fees can be segregated between various claims is a question for the court. *Aetna Cas. & Sur. v. Wild*, 944 S.W.2d 37, 41 (Tex. App.—Amarillo 1997, writ denied).

To prevail on his claim that appellees violated the temporary injunction, Chitsey had to prove that since the injunction was issued, the Association had identified itself as an incorporated entity. To prevail on his claim of tortious interference with contract, Chitsey had to prove that (1) a contract subject to interference exists, (2) the alleged act of interference was willful and intentional, (3) the willful and intentional act proximately caused damage, and (4) that actual damage or loss occurred. *McLaughlin*, 943 S.W.2d at 430. And in order to prove a violation of the DTPA, Chitsey had to prove the following elements: (1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages. *See* Tex. Bus. & Com. Code Ann. § 17.50(a)(1) (West Supp. 2001); *Doe v. Boys Club*, 907 S.W.2d 472, 478 (Tex. 1995). We agree with the trial court that these claims do not require proof of several overlapping facts, and the claims were thus severable. Chitsey's second point is overruled.

By his third and fourth points of error, Chitsey challenges the legal and factual sufficiency of the evidence to support the trial court's judgment. In considering a legal sufficiency

point, we consider only the evidence or inferences from the evidence favorable to the decision of the trier of fact and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). If the appellant did not have the burden of proof on the challenged finding, the appellant must show that no evidence supports the adverse finding; the challenge fails if more than a scintilla of evidence supports the finding. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex. 1987). The appellant must go one step further when attacking an adverse failure to find on which it had the burden of proof; that appellant must also show that the evidence conclusively established all vital facts in support of the issue. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989); *Holley v. Watts*, 629 S.W.2d 694, 696-97 (Tex. 1982).

When reviewing a factual sufficiency challenge, we must assess all the evidence and may not substitute our judgment for that of the trier of fact. When the challenge is to a finding on which the prevailing party had the burden of proof, we may reverse the judgment only if the challenged finding shocks the conscience or clearly shows bias, or if the favorable evidence is so weak as to make the judgment clearly wrong and manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). If the challenge is to an adverse finding, or failure to find, on which the appellant had the burden of proof, we may reverse only if the failure to find is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Ames v. Ames*, 776 S.W.2d 154, 158 (Tex. 1989); *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex. 1988).

Here, Chitsey maintains the trial court erred in awarding damages to appellees under their theories of unjust enrichment, quantum meruit, and breach of contract because there was no

10

evidence or insufficient evidence to support such a finding.[7]  Because the judgment does not specify which theory of recovery the trial court relied on in support of its ruling, we will uphold the judgment if any of the theories supports it.  *Peterson Sales Co. v. Mica, Inc.*, 623 S.W.2d 679, 681 (Tex. Civ. App.—Houston [1st Dist.] 1981, no writ).

In order to prevail under the equitable theory of unjust enrichment, a party must establish that a person securing or passively receiving benefits that are unjust for him to retain ought to make restitution; this principle gives rise to an implied or quasi-contract to repay.  *Bransom v. Standard Hardware, Inc.*, 874 S.W.2d 919, 927 (Tex. App.—Fort Worth 1994, writ denied); *Corpus Christi v. Heldenfels Bros.*, 802 S.W.2d 35, 40 (Tex. App.—Corpus Christi 1990), *aff'd*, 832 S.W.2d 39 (Tex. 1992).  Quantum meruit consists of the following elements: (1) valuable services or materials were furnished, (2) for the person sought to be charged, (3) the services or materials were accepted, used, and enjoyed by that person, (4) under circumstances that reasonably implied the plaintiff was expecting to be paid for such services.  *Heldenfels Bros.*, 802 S.W.2d at 39.  It is predicated on an implied agreement to pay for benefits rendered and knowingly accepted.  *Id.*  Unjust enrichment and quantum meruit are considered synonymous by some courts; both result from quasi-contractual liability in the absence of an express contract.  *Id.* at 39-40; *LaChance v. Hollenbeck*, 695 S.W.2d 618, 620 (Tex. App.—Austin 1985, writ ref'd n.r.e.).

---

[7] By his fourth point, Chitsey challenges the sufficiency of the evidence to support the findings of fact and conclusions of law.  However, although the record reflects that Chitsey requested findings of fact and conclusions of law from the trial court, the record does not include any such findings or conclusions.  Proposed findings of fact and conclusions of law are included in the record, but they are not signed by the trial court.  Moreover, the record does not reflect that Chitsey ever brought to the attention of the trial court its failure to file findings of fact and conclusions of law.  *See* Tex. R. Civ. P. 297.  Thus, we presume that the evidence presented to the trial court supports its judgment.  *See Peterson Sales Co. v. Mica, Inc.*, 623 S.W.2d 679, 681 (Tex. Civ. App.–Houston [1st Dist.] 1981, no writ).

In support of their claim for unjust enrichment, appellees presented evidence showing that Chitsey was a mortgagee in possession of Unit 102. *See Wilhite v. Yount-Lee Oil Co.*, 140 S.W.2d 293, 296 (Tex. Civ. App.—Texarkana 1940, writ ref'd) (holding mortgagee in possession is one who takes possession of mortgaged land by virtue of his contract with debtor; mortgagee may retain possession until debt is paid). As a mortgagee in possession, Chitsey is obligated to incur and pay expenses necessary for the upkeep of the premises. *Pioneer Bldg. & Loan Ass'n v. Cowan*, 123 S.W.2d 726, 730 (Tex. Civ. App.—Waco 1938, writ dism'd) (holding mortgagee in possession is obligated to incur and pay expenses necessary to the upkeep and preservation of the premises). According to the Declaration admitted into evidence, the Association is responsible for maintaining, repairing, and replacing all portions of the common elements of the complex. The Declaration also provides that each unit owner is assessed a fee for the maintenance, upkeep, and repair of the common elements. As a mortgagee in possession, Chitsey received the benefits of the Association's maintenance duties; however, the evidence presented indicates that Chitsey did not always pay the assessments associated with those duties. Further, the evidence revealed that during most of the periods of delinquency, Chitsey was receiving rental income from the units. Therefore, we conclude this evidence is both factually and legally sufficient to support the trial court's judgment that Chitsey was unjustly enriched by the services performed by the Association.

The appellees presented an accounting of the delinquent assessments as evidence of the value of the services the Association provided Chitsey. According to these statements, the assessments for Units 102 and 208 were in arrears. The most current statement provided to the trial

court[8] indicated that Unit 208 had an outstanding balance of $9,148.72, and Unit 102 had an outstanding balance of $3,584.20, totaling $12,732.92 in delinquent assessments. Chitsey provided no evidence controverting these figures. We hold this evidence is both legally and factually sufficient to support the trial court's judgment in favor of appellees in the amount of $11,782.92[9] under the theory of unjust enrichment.

Chitsey also challenges the trial court's award of attorney's fees. Section 38.001 of the civil practice and remedies code authorizes the recovery of attorney's fees in suits founded on an oral or written contract. Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 1997). Appellees' claim of unjust enrichment does not preclude the award of attorney's fees under this section. *Caldwell & Hurst v. Myers*, 714 S.W.2d 63, 65 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (holding that recovery on theory of quantum meruit does not disqualify award of attorney's fees). Appellees presented evidence of reasonable and necessary attorney's fees to the trial court; Chitsey did not controvert this evidence. We therefore conclude that the trial court did not err in awarding appellees their attorney's fees.

Finally, Chitsey claims the trial court erred in denying him recovery based on his DTPA claim. In order to prevail on his claim, Chitsey had the burden of proving the following: (1) he is a consumer, (2) appellees engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's economic or mental anguish damages. *See* Tex. Bus. & Com. Code Ann. § 17.50(a)(1); *Doe*, 907 S.W.2d at 478. Economic damages are defined as

---

[8] The trial court reopened the evidence in order to admit an updated accounting of the delinquent fees.

[9] It is unclear how the court reached its total of $11,782.92.

13

"compensatory damages for pecuniary loss, including costs of repair and replacement." Tex. Bus. & Com. Code Ann. § 17.45(11) (West Supp. 2001).

Here, Chitsey alleged that appellees committed a DTPA violation by misrepresenting the Association as a corporation. However, Chitsey presented no evidence of damages suffered as a result of this misrepresentation. Although Chitsey requested reimbursement for all sums he paid to "Red River North Condominium Association, Inc.," he failed to produce evidence of any checks made payable to that entity. Moreover, Chitsey failed to prove that he was not liable to the Association for those sums and was entitled to reimbursement. We conclude that Chitsey failed to establish all vital facts necessary to support his DTPA claim and the trial court's failure to find a DTPA violation was not so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Chitsey's third and fourth points of error are overruled.

## CONCLUSION

Having overruled all of Chitsey's points of error, we affirm the judgment of the trial court.

Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed:   November 1, 2001

14

Do Not Publish