TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN


 



NO. 03-00-00663-CV






Henry E. Chitsey, Appellant



v.



Jody Lockshin, Individually and Red River North Condominium Association; Niemann &
Niemann, L.L.P.; and Larry Niemann, Individually, Appellees





FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY


NO. 239,757, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING 







 Appellant Henry E. Chitsey ("Chitsey") filed suit against appellees for, inter alia,
violating a temporary injunction, tortious interference with a contract, and violations of the Texas
Deceptive Trade Practices--Consumer Protection Act ("DTPA"). See Tex. Bus. & Com. Code Ann.
§§ 17.41 - .63 (West 1987 & Supp. 2001). Appellees counterclaimed, alleging breach of contract,
unjust enrichment, and quantum meruit. The trial court found that appellees had violated the
temporary injunction and awarded Chitsey $1 in damages, plus $300 in attorney's fees, but denied
recovery on Chitsey's other claims. The court rendered judgment in favor of appellees on their
counterclaims and awarded damages in the amount of $11,782.92, plus court costs and attorney's
fees. Chitsey appeals. We will affirm the judgment.







BACKGROUND

 Chitsey was the first lienholder of condominium unit 102 ("Unit 102") in the Red
River Condominium complex. Since at least 1994, Chitsey's son, Ron Chitsey, had been collecting
rent for the unit directly from the tenants pursuant to the assignment of a real estate lien note from
the owners of the unit, Warren and Delanie Lundgren. (1) Chitsey also owned another unit in the same
complex, Unit 206, and was the first lienholder for Units 207 and 208. In 1984, Chitsey signed a
Declaration, which was filed with the deed records for the condominium units. (2) According to the
testimony at trial, the Declaration is a contract between the Red River North Condominium
Association (the "Association") and the homeowners. This Declaration contained a provision
allowing the Association to collect assessment fees as follows:



 Common Expenses, Assessments - Each Ownership Unit Owner shall be bound
and obligated and agrees to pay, as assessments therefor are made during his
tenure of ownership, his pro-rata part and share of the expenses of administration,
maintenance, repair, upkeep, protection, replacement, and operation of the
Common elements, assessments made by the Council of Co-owners (3) and any
other expenses lawfully agreed to by the Council of Co-Owners as authorized by
the Act, this Declaration or by the By-Laws appended hereto . . . . The amount
of common expenses assessed against each Unit shall be the debt and obligation
of the Ownership Unit Owner at the time the assessment is made.


(Footnote added.)

 The Declaration further allowed the Association to obtain a lien to secure unpaid
assessments:



 Liens to Secure Assessments - The assessments above described shall be made
against the then Ownership Unit Owner personally of each and also against the
Ownership Unit itself, and in the event any unit owner shall fail or refuse to pay
his pro-rata share and part of the common expenses as the same shall become due
and payable, then all such assessments which have become due and payable and
which have not been paid shall be assessed against all other Ownership Unit
Owners. . . . Such liens shall be prior to all other liens, except that such
assessment liens shall be subordinate secondary and inferior to . . . (2) all liens
securing amounts due or to become due under any mortgage, vendor's lien or
Deed of Trust filed for record prior to the date payment for such assessment for
common expenses became due and payable . . . .



 Such lien for common expenses herein provided for may be foreclosed, without
prejudice and subject to the aforesaid prior and superior liens, by suit by the
Council of Co-owners or any authorized officer or member thereof, acting in
behalf of all Ownership Unit Owners in like manner as mortgages on real
property. No foreclosure suit or sale thereunder shall affect or impair any of the
prior liens above mentioned.



Because of delinquent assessments, the Association obtained a lien on Unit 102.

 On May 7, 1997, after giving notice, the Association foreclosed on Unit 102 for
unpaid homeowner association assessments. The Association purchased the unit at the foreclosure
sale. Thereafter, the Association notified the tenants in Unit 102 that all future rents should be paid
directly to the Association. The Association then applied the rents to the delinquent assessment fees.

 On February 27, 1998, Chitsey filed his original petition against appellees for tortious
interference with a contract, alleging that appellees interfered with Chitsey's contract with the Unit
102 tenant by directing the tenant to pay rent to the Association rather than to Chitsey. (4) Chitsey also
alleged that the Association had represented itself as an incorporated entity in numerous documents
and correspondence, even though it had never registered itself as a corporation with the Secretary
of State. Based on this allegation, Chitsey accused appellees of violating a temporary injunction
previously issued by the trial court (5) and sought a permanent injunction to enjoin the Association
from continuing to misrepresent itself as a corporation. Chitsey later amended his petition to include
a DTPA claim based on the Association's misrepresenting itself as a corporation. 

 In December 1998, Chitsey attempted to foreclose on Unit 102 through his son, Ron
Chitsey. Thereafter, Ron Chitsey resumed collecting rent from the tenants in Unit 102 from January
1999 through May 1999. Ron Chitsey then recorded the trustee's deed evidencing the foreclosure
in June 1999.

 Upon receipt of a copy of the trustee's deed, the Association determined that the
attempted foreclosure by Ron Chitsey was invalid because Ron Chitsey, not Henry Chitsey,
purported to appoint the substitute trustee and foreclose on Unit 102, even though Henry Chitsey was
the actual lienholder. Therefore, in June 1999, the Association resumed collecting rent from the
tenants in Unit 102.

 Additionally, appellees responded to Chitsey's suit by filing an answer, alleging that
(1) Ron Chitsey's attempted foreclosure of Unit 102 was invalid and enforcement of the note and
deed of trust for that unit is barred by limitations, (2) the Association is the sole title holder of Unit
102 due to its enforcement of its lien, (3) Chitsey suffered no damages and was unjustly enriched,
(4) the DTPA notice requirements were not satisfied and Chitsey suffered no economic damages as
required by the DTPA, and (5) Chitsey had no standing to sue attorneys Niemann & Niemann or
Larry Niemann, individually, and furthermore, the attorneys were immune from suit. (6) Appellees
further averred that Chitsey benefitted from the Association's upkeep and maintenance of the
complex, including Units 102, 206, 207, and 208, and because Chitsey failed to pay the assessments
associated with the maintenance, he was liable to appellees for unjust enrichment. Appellees sought
damages for the unpaid assessments, plus attorney's fees for breach of the Declaration.

 The trial court found in favor of the appellees with regard to their counterclaim and
ordered Chitsey to pay damages in the sum of $11,782.92, plus attorney's fees. The court further
found that Chitsey was entitled to damages in the amount of $1 for enforcement of the temporary
injunction and awarded Chitsey attorney's fees in the amount of $300. All other requested relief was
denied.

 Chitsey subsequently requested findings of fact and conclusions of law, which the
trial court filed, and moved for a new trial, which the trial court denied. Chitsey now appeals the
trial court's judgment.


DISCUSSION

 We will first address Chitsey's contention that the county court was without
jurisdiction to consider "a suit for the enforcement of a lien on land." See Tex. Gov't Code Ann.
§ 26.043(2) (West 1988) ("A county court does not have jurisdiction in: . . . (2) a suit for the
enforcement of a lien on land . . . ."). This suit was initiated by Chitsey primarily to recover damages
for tortious interference with contract and violations of the DTPA. In order to determine if Chitsey
was entitled to enforce the contract between himself and the tenants, it was necessary to determine
whether Chitsey's foreclosure was valid. In such cases, the county court may determine title in order
to enter judgment on Chitsey's tortious interference with contract claim.


 In actions for a debt or damages, in amounts within the jurisdiction of the county
courts, the right of recovery may depend upon the title to land. The court having the
power expressly given to determine such right to recover must decide all questions
of law and fact upon which its determination depends. Thus the question of title
comes incidentally into the case, and must be decided before the court can render
judgment settling the claims in dispute. But in doing so it does not adjudicate or
settle the title to the land, nor the right to recover it, but simply determines that the
plaintiff is or is not entitled to recover the thing sued for within the jurisdiction [of
the court].



Victoria v. Schott, 29 S.W. 681, 681 (Tex. Civ. App.--Houston 1895, no writ); accord Fry v.
Ahrens, 256 S.W.2d 115, 116 (Tex. Civ. App.--Galveston 1953, no writ) ("Where the title to
land . . . is only incidentally involved in a suit brought to recover damages in an amount within the
jurisdiction of the county court, . . . the amount of damages sought, in good faith, to be recovered,
is the determinative jurisdictional factor."); Robinson v. Clymer, 170 S.W. 107, 108 (Tex. Civ.
App.--Dallas 1914, writ dism'd) (same). We conclude that the county court did not exceed its
jurisdiction in deciding the validity of Chitsey's attempted foreclosure as a prerequisite to
determining liability on Chitsey's claim for tortious interference with a contract.

 By his first point of error, Chitsey argues that the trial court erred in rendering
judgment against him on his claim for tortious interference with a contract because the appellees
judicially admitted that they told the tenants to discontinue paying rent to Chitsey and instead
directed them to pay rent directly to the Association, that they intended to publish the letter inducing
the tenants not to pay rent to Chitsey, and they stipulated that they began receiving the rental
proceeds on June 1, 1997. A party alleging tortious interference with a contract must prove that (1)
a contract subject to interference exists, (2) the alleged act of interference was willful and intentional,
(3) the willful and intentional act proximately caused damage, and (4) actual damage or loss
occurred. ACS Investors, Inc. v. McLaughlin, 943 S.W.2d 426, 430 (Tex. 1997). Although Chitsey
maintains that appellees judicially admitted to intentionally directing the tenants to pay their rent to
the Association instead of to Chitsey, Chitsey has failed to address the other elements necessary to
sustain his cause of action for tortious interference with a contract.

 First, Chitsey did not establish that a contract subject to interference still existed at
the time of the alleged interference. On May 7, 1997, the Association performed a non-judicial
foreclosure on Unit 102, pursuant to the Declaration. The Association then purchased the unit at the
foreclosure sale. The trustee's deed reflecting the foreclosure sale was filed May 13, 1997 in the
Real Property Records of Travis County. Once the Association became the owner of Unit 102,
Chitsey was no longer entitled to collect the rent from that unit. The foreclosure sale terminated any
lease between the original owner and the tenants, and therefore Chitsey was no longer entitled to
collect pursuant to that lease. See ICM Mortgage Corp. v. Jacob, 902 S.W.2d 527, 533 (Tex.
App.--El Paso 1994, writ denied). In other words, at that point in time, a contract subject to
interference ceased to exist.

 Moreover, Chitsey is unable to direct this Court to evidence indicating that appellees'
actions proximately caused him damage. At trial, appellees produced Karen Coffee, the manager
of the complex, as a witness. Coffee testified that after the Association began collecting rent from
Unit 102, the Association applied that rent to the outstanding homeowner assessment fees. Thus,
Chitsey was not damaged by the Association's collection of the rent. Chitsey's first point is
overruled.

 By his second point, Chitsey argues that the trial court abused its discretion in
awarding attorney's fees in the amount of only $300. The trial court awarded Chitsey attorney's fees
for enforcing the temporary injunction. Chitsey argues that the trial court abused its discretion in
limiting the attorney's fees to the fees associated with enforcement of the temporary injunction
because the issues litigated at trial, including the tortious interference with contract and DTPA
claims, were so "interrelated as to be inseparable."

 A party may not recover attorney's fees for claims on which the party did not prevail. 
Hartford Cas. Ins. Co. v. Budget Rent-A-Car Sys., Inc., 796 S.W.2d 763, 772 (Tex. App.--Dallas
1990, writ denied). A party seeking attorney's fees usually has a duty to segregate nonrecoverable
fees from recoverable fees. Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 10-11 (Tex. 1991);
Stamp-Ad, Inc. v. Barton Raben, Inc., 915 S.W.2d 932, 937 (Tex. App.--Houston [1st Dist.] 1996,
no writ). However, there is an exception to this duty--when the attorney's fees rendered are in
connection with claims arising out of the same transaction and are so interrelated that their
prosecution or defense entails proof or denial of essentially the same facts. Stewart Title, 822
S.W.2d at 11; Stamp-Ad, 915 S.W.2d at 937-38. Therefore, when the causes of action involved in
the suit are dependent upon the same set of facts or circumstances and thus are "intertwined to the
point of being inseparable," the party suing for attorney's fees may recover the entire amount
covering all claims. Stewart Title, 822 S.W.2d at 11. Whether fees can be segregated between
various claims is a question for the court. Aetna Cas. & Sur. v. Wild, 944 S.W.2d 37, 41 (Tex.
App.--Amarillo 1997, writ denied).

 To prevail on his claim that appellees violated the temporary injunction, Chitsey had
to prove that since the injunction was issued, the Association had identified itself as an incorporated
entity. To prevail on his claim of tortious interference with contract, Chitsey had to prove that (1)
a contract subject to interference exists, (2) the alleged act of interference was willful and intentional,
(3) the willful and intentional act proximately caused damage, and (4) that actual damage or loss
occurred. McLaughlin, 943 S.W.2d at 430. And in order to prove a violation of the DTPA, Chitsey
had to prove the following elements: (1) the plaintiff is a consumer, (2) the defendant engaged in
false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the
consumer's damages. See Tex. Bus. & Com. Code Ann. § 17.50(a)(1) (West Supp. 2001); Doe v.
Boys Club, 907 S.W.2d 472, 478 (Tex. 1995). We agree with the trial court that these claims do not
require proof of several overlapping facts, and the claims were thus severable. Chitsey's second
point is overruled.

 By his third and fourth points of error, Chitsey challenges the legal and factual
sufficiency of the evidence to support the trial court's judgment. In considering a legal sufficiency
point, we consider only the evidence or inferences from the evidence favorable to the decision of the
trier of fact and disregard all evidence and inferences to the contrary. Garza v. Alviar, 395 S.W.2d
821, 823 (Tex. 1965). If the appellant did not have the burden of proof on the challenged finding,
the appellant must show that no evidence supports the adverse finding; the challenge fails if more
than a scintilla of evidence supports the finding. Stafford v. Stafford, 726 S.W.2d 14, 16 (Tex.
1987). The appellant must go one step further when attacking an adverse failure to find on which
it had the burden of proof; that appellant must also show that the evidence conclusively established
all vital facts in support of the issue. Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex.
1989); Holley v. Watts, 629 S.W.2d 694, 696-97 (Tex. 1982).

 When reviewing a factual sufficiency challenge, we must assess all the evidence and
may not substitute our judgment for that of the trier of fact. When the challenge is to a finding on
which the prevailing party had the burden of proof, we may reverse the judgment only if the
challenged finding shocks the conscience or clearly shows bias, or if the favorable evidence is so
weak as to make the judgment clearly wrong and manifestly unjust. Pool v. Ford Motor Co., 715
S.W.2d 629, 635 (Tex. 1986); Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). If the challenge is
to an adverse finding, or failure to find, on which the appellant had the burden of proof, we may
reverse only if the failure to find is so contrary to the overwhelming weight and preponderance of
the evidence as to be clearly wrong and manifestly unjust. Ames v. Ames, 776 S.W.2d 154, 158 (Tex.
1989); Cropper v. Caterpillar Tractor Co., 754 S.W.2d 646, 651 (Tex. 1988).

 Here, Chitsey maintains the trial court erred in awarding damages to appellees under
their theories of unjust enrichment, quantum meruit, and breach of contract because there was no
evidence or insufficient evidence to support such a finding. Because the judgment does not specify
which theory of recovery the trial court relied on in support of its ruling, we will uphold the
judgment if any of the theories supports it. Peterson Sales Co. v. Mica, Inc., 623 S.W.2d 679, 681
(Tex. Civ. App.--Houston [1st Dist.] 1981, no writ).

 In order to prevail under the equitable theory of unjust enrichment, a party must
establish that a person securing or passively receiving benefits that are unjust for him to retain ought
to make restitution; this principle gives rise to an implied or quasi-contract to repay. Bransom v.
Standard Hardware, Inc., 874 S.W.2d 919, 927 (Tex. App.--Fort Worth 1994, writ denied); Corpus
Christi v. Heldenfels Bros., 802 S.W.2d 35, 40 (Tex. App.--Corpus Christi 1990), aff'd, 832 S.W.2d
39 (Tex. 1992). Quantum meruit consists of the following elements: (1) valuable services or
materials were furnished, (2) for the person sought to be charged, (3) the services or materials were
accepted, used, and enjoyed by that person, (4) under circumstances that reasonably implied the
plaintiff was expecting to be paid for such services. Heldenfels Bros., 802 S.W.2d at 39. It is
predicated on an implied agreement to pay for benefits rendered and knowingly accepted. Id. Unjust
enrichment and quantum meruit are considered synonymous by some courts; both result from quasi-contractual liability in the absence of an express contract. Id. at 39-40; LaChance v. Hollenbeck, 695
S.W.2d 618, 620 (Tex. App.--Austin 1985, writ ref'd n.r.e.).


 In support of their claim for unjust enrichment, appellees presented evidence showing
that Chitsey was a mortgagee in possession of Unit 102. See Wilhite v. Yount-Lee Oil Co., 140
S.W.2d 293, 296 (Tex. Civ. App.--Texarkana 1940, writ ref'd) (holding mortgagee in possession
is one who takes possession of mortgaged land by virtue of his contract with debtor; mortgagee may
retain possession until debt is paid). As a mortgagee in possession, Chitsey is obligated to incur and
pay expenses necessary for the upkeep of the premises. Pioneer Bldg. & Loan Ass'n v. Cowan, 123
S.W.2d 726, 730 (Tex. Civ. App.--Waco 1938, writ dism'd) (holding mortgagee in possession is
obligated to incur and pay expenses necessary to the upkeep and preservation of the premises). 
According to the Declaration admitted into evidence, the Association is responsible for maintaining,
repairing, and replacing all portions of the common elements of the complex. The Declaration also
provides that each unit owner is assessed a fee for the maintenance, upkeep, and repair of the
common elements. As a mortgagee in possession, Chitsey received the benefits of the Association's
maintenance duties; however, the evidence presented indicates that Chitsey did not always pay the
assessments associated with those duties. Further, the evidence revealed that during most of the
periods of delinquency, Chitsey was receiving rental income from the units. Therefore, we conclude
this evidence is both factually and legally sufficient to support the trial court's judgment that Chitsey
was unjustly enriched by the services performed by the Association. 

 The appellees presented an accounting of the delinquent assessments as evidence of
the value of the services the Association provided Chitsey. According to these statements, the
assessments for Units 102 and 208 were in arrears. The most current statement provided to the trial
court (7) indicated that Unit 208 had an outstanding balance of $9,148.72, and Unit 102 had an
outstanding balance of $3,584.20, totaling $12,732.92 in delinquent assessments. Chitsey provided
no evidence controverting these figures. We hold this evidence is both legally and factually
sufficient to support the trial court's judgment in favor of appellees in the amount of $11,782.92 (8)
under the theory of unjust enrichment.

 Chitsey also challenges the trial court's award of attorney's fees. Section 38.001 of
the civil practice and remedies code authorizes the recovery of attorney's fees in suits founded on
an oral or written contract. Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 1997). Appellees'
claim of unjust enrichment does not preclude the award of attorney's fees under this section. 
Caldwell & Hurst v. Myers, 714 S.W.2d 63, 65 (Tex. App.--Houston [14th Dist.] 1986, writ ref'd
n.r.e.) (holding that recovery on theory of quantum meruit does not disqualify award of attorney's
fees). Appellees presented evidence of reasonable and necessary attorney's fees to the trial court;
Chitsey did not controvert this evidence. We therefore conclude that the trial court did not err in
awarding appellees their attorney's fees.

 Finally, Chitsey claims the trial court erred in denying him recovery based on his
DTPA claim. In order to prevail on his claim, Chitsey had the burden of proving the following: (1)
he is a consumer, (2) appellees engaged in false, misleading, or deceptive acts, and (3) these acts
constituted a producing cause of the consumer's economic or mental anguish damages. See Tex.
Bus. & Com. Code Ann. § 17.50(a)(1); Doe, 907 S.W.2d at 478. Economic damages are defined
as "compensatory damages for pecuniary loss, including costs of repair and replacement." Tex. Bus.
& Com. Code Ann. § 17.45(11) (West Supp. 2001). 

 Here, Chitsey alleged that appellees committed a DTPA violation by misrepresenting
the Association as a corporation. However, Chitsey presented no evidence of damages suffered as
a result of this misrepresentation. Although Chitsey requested reimbursement for all sums he paid
to "Red River North Condominium Association, Inc.," he failed to produce evidence of any checks
made payable to that entity. Moreover, Chitsey failed to prove that he was not liable to the
Association for those sums and was entitled to reimbursement. We conclude that Chitsey failed to
establish all vital facts necessary to support his DTPA claim and the trial court's failure to find a
DTPA violation was not so contrary to the great weight and preponderance of the evidence as to be
clearly wrong and manifestly unjust. Chitsey's third and fourth points of error are overruled.


CONCLUSION

 Having overruled all of Chitsey's points of error, we affirm the judgment of the trial
court.



 

 Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed: November 1, 2001

Do Not Publish
1. It is unclear from the record when Ron Chitsey first began collecting rent for the unit;
however, the exhibits presented to the trial court indicate that he had been leasing the premises and
collecting rent since at least 1994.
2. The Declaration admitted into evidence at the trial was signed by Ron Chitsey. It states that
it applies to Ron Chitsey, as "Owner in fee simple" of the tracts of land described in the Declaration. 
It is unclear whether the Declaration admitted into evidence applies to any of the units at issue in this
case, since neither party alleges that Ron Chitsey is the fee simple owner of any of those units.
3. According to testimony at trial, "Council of Co-Owners" is used interchangeably with "Red
River Condominium Association" and refers to the same entity.
4. Chitsey also sued appellees for violations of state and federal debt collection laws,
unreasonable debt collection practices, breach of contract, recovery of expenses incurred in clearing
cloud on title, violating a temporary injunction, and for recovery of payments made to the
Association as an incorporated entity.
5. An order signed by the trial court on January 15, 1999 indicates that a temporary injunction
hearing was held on July 16, 1998, and the trial court denied the application for temporary injunction
in part and granted it in part. The order enjoins appellees from continuing to refer to the Association
as an incorporated entity.
6. Appellees also performed a second foreclosure on Unit 102 in order to ensure that all
foreclosure notices and other documents did not include the term "Inc." following the Association's
name. The trustee's deed accurately reflecting the Association's name was filed on July 7, 1998.
7. The trial court reopened the evidence in order to admit an updated accounting of the
delinquent fees.
8. It is unclear how the court reached its total of $11,782.92.